TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KERRY L. QUINN (Cal. Bar No. 302954)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-5423
     Facsimile:  (213) 894-6269
     E-mail:     Kerry.L.Quinn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 13-001(B)-DOC-1 |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION; DECLARATION OF FBI SPECIAL AGENT LUIS SANTISTEBAN WITH EXHIBIT |
| v. | |
| MOMOUD AREF ABAJI, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel

of record, Assistant United States Attorney Kerry L. Quinn, hereby

files its sentencing position for defendant MOMOUD AREF ABAJI.

//

//

//

//

//

//

1    This sentencing position is based upon the attached memorandum

2  of points and authorities, the files and records in this case, and

3  such further evidence and argument as the Court may permit.

4  Dated: October 19, 2021        Respectfully submitted,

5                                 TRACY WILKISON
                                   Acting United States Attorney
6
                                   SCOTT M. GARRINGER
7                                  Assistant United States Attorney
                                   Chief, Criminal Division
8

9                                  _____/s/_____
                                   KERRY L. QUINN
10                                 Assistant United States Attorney

11                                 Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................1

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.   INTRODUCTION..................................................1

II.  FACTS........................................................2

III. ARGUMENT.....................................................7

     A.   Applicable Sentencing Guidelines........................7

     B.   Analysis of § 3553(a) Factors...........................9

          1.   Nature & Circumstances of the Offense..............10

          2.   Deterrence.........................................10

          3.   History & Characteristics of Defendant.............11

IV.  CONCLUSION...................................................11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant MOMOUD AREF ABAJI ("defendant") is before this Court for resentencing following his 2015 convictions for charges related to a $10+ million mortgage fraud scheme that he helped orchestrate in the midst of the 2008 financial crisis.  A jury convicted defendant of numerous charges related to this scheme, including conspiracy to commit bank and wire fraud, five counts of wire fraud, and two counts of tax evasion, all following a 3-week jury trial in 2015.  In July 2019, the original sentencing court (Hon. Andrew Guilford) sentenced defendant to a 108-month prison term, followed by a five-year period of supervised release.  Defendant appealed his convictions and sentence to the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit").  The Ninth Circuit affirmed his convictions but vacated his sentence and remanded for resentencing on the single issue of guideline loss amount, holding that the loss amount for guideline purposes should be calculated in accordance with Ninth Circuit precedent by taking the principal amounts of the fraudulent loans and subtracting the sale prices of properties that served as collateral for the loans.

As set forth in the attached declaration of Special Agent Luis Santisteban of the Federal Bureau of Investigation ("FBI") (the "Santisteban Declaration"), the new loss amount for guideline purposes – using the methodology set forth above – is approximately $12 million.  This loss amount is calculated the same way as the loss amount calculated by the United States Pretrial Services and Probation Office ("USPO") in the revised Presentence Investigation Report issued on September 28, 2021 [docket no. 675 ("PSR")], and

results in a total offense level of 32 and a guideline range of 121-151 months.  The government recognizes, however, that the original sentencing court sentenced defendant to a term of 108 months (before defendant prevailed on his appeal of the loss amount issue).  The government recommends that this Court sentence defendant to a term of imprisonment of no less than 108 months followed by a 5-year term of supervised release.

## II.  FACTS

From approximately November 2007 to approximately July 2009, defendant and others participated in a scheme to defraud mortgage lenders by inducing them to fund loans based on the submission of false information on loan applications.  (PSR ¶ 15.)  Two of defendant's co-conspirators, defendant's younger brother Maher Obagi ("Obagi") and another co-conspirator named Mohamed Salah ("Salah"), were convicted of crimes related to this scheme after a jury trial in March 2015.  (PSR ¶¶ 7, 11.)  Three other co-conspirators - Ali Khatib ("Khatib"), Jacqueline Burchell ("Burchell") and Mohamed El Tahir ("El Tahir") - pled guilty to related crimes and agreed to cooperate with the government.  (PSR ¶¶ 9, 10, 12.)  Charges against El Tahir were dismissed after he was killed in an unrelated incident.  (PSR ¶ 10.)

The Conspiracy & Scheme

The conspiracy and scheme operated substantially the same from 2007 to 2009:

Defendant and his co-conspirators would identify newly-built, multi-unit condominium properties, including properties located in Florida, California, and Arizona, in which the builder-sellers ("sellers") were struggling to sell the properties in the aftermath

2

of the 2008 financial crisis, and defendant and his co-conspirators
would make arrangements to purchase a large number of properties from
the sellers in exchange for a large undisclosed kickback, which they
would misleadingly call a "marketing fee," "credit," or "commission."
(PSR ¶ 23.)  As discussed in more detail below, in addition to his
other roles in the scheme, defendant was the one who negotiated the
kickbacks with the sellers.

Through the scheme, defendant and his co-conspirators would
purchase, and cause the purchase of, newly-built condominium units in
the unsold developments.  (PSR ¶¶ 24-25.)  They purchased these units
in their own names, in the names of relatives, and in the names of
individuals with good credit scores who were recruited to serve as
purchasers (collectively, "straw buyers").  (PSR ¶ 25.)  In total,
the co-conspirators purchased or caused the purchase of more than 100
condominium units in developments around the country, and they
obtained more than $6 million in fraudulently-derived proceeds, using
more than $20 million in fraudulently-obtained loans, and causing
more than $10 million in actual losses as a result of the scheme.
(PSR ¶ 24, 70; Trial Exhibit 1.)

Defendant and other co-conspirators working at his direction
would further identify mortgage lenders, including federally
chartered and insured depository institutions, to fund mortgages for
the purchase of the condominium units in the straw buyers' names, and
would prepare and submit loan applications on behalf of the straw
buyers.  (PSR ¶ 26.)

Defendant and other co-conspirators working at his direction
would include materially false and misleading information in the loan
applications about the buyers' employment, income, assets,

3

liabilities, and ability to make a down payment toward the purchase of the properties.  (PSR ¶ 27.)  The co-conspirators would falsely represent to the mortgage lenders that the straw buyers had made significant down payments toward the purchase of the properties when in fact the straw buyers had contributed nothing toward the purchase and in many cases received money from the transaction.  (PSR ¶ 29.)

Defendant and other co-conspirators working at his direction would simultaneously submit loan applications to different mortgage lenders for the purchase of multiple properties in the name of the same straw buyers, concealing from each mortgage lender the buyer's multiple loan applications and liabilities.  (PSR ¶ 30.)

Other co-conspirators working at defendant's direction would create fraudulent documents, including fabricated and altered W-2 forms, pay stubs, and bank statements, to support the false information in loan applications.  (PSR ¶ 28.)  Defendant himself also fabricated at least some of the financial documents to be included as part of loan applications.

Other co-conspirators working at defendant's direction would take steps to make it appear that fictitious company were real businesses so that the co-conspirators could, on loan applications submitted to lenders, list these fictitious companies as sham employers for the straw borrowers.  (PSR ¶ 32.)  Similarly, other co-conspirators would purchase, again under defendant's direction, prepaid cell phones to have numbers to list for the sham companies on loan applications, and they would list these numbers associated with these phones as numbers for borrowers and fictitious employers. Defendant himself, and Obagi and Salah working under defendant's

4

1    direction would then answer those phones and pretend to be borrowers

2    and employers when lenders called to verify information.  (PSR ¶ 33.)

3         Defendant and other co-conspirators would conceal from the

4    mortgage lenders significant kickbacks - misleadingly called

5    "marketing fees," "credits," or commissions - paid by the sellers to

6    defendant and his co-conspirators in connection with the purchase of

7    these properties.  (PSR ¶ 34.)

8         Burchell, the escrow officer, facilitated the scheme by creating

9    two versions of HUD-1s (or closing statements) provided to the

10   lenders.  The false HUD-1s, labeled "estimated," would conceal from

11   the lenders the significant kickbacks that builders were paying to

12   the defendants.  (PSR ¶ 36.)  In many of the transactions, the

13   kickbacks totaled $50,000 to $100,000, or more, on properties whose

14   list price was less than $300,000. (PSR ¶ 36.)

15        Burchell would provide the false or "estimated" HUD-1s to the

16   lenders in advance of and at closing.  Immediately after the deal

17   closed, or as it was preparing to close, Burchell would alter the

18   false or "estimated" HUD-1s to create accurate, "final" HUD-1s, which

19   she maintained in her files, but did not disclose to the mortgage

20   lenders.  If the lenders asked for the "final" HUD-1, Burchell

21   ignored the requests.  (PSR ¶ 37.)

22        At the beginning of the scheme, Obagi instructed Burchell not to

23   let lenders know about the kickbacks, and for most of the properties,

24   Burchell provided the co-conspirators a significant portion of the

25   funded loan amount directly out of escrow.  Once the deal closed, the

26   co-conspirators would divide the proceeds, paying themselves, making

27   some mortgage payments, and making payments to the straw buyers. (PSR

28   ¶ 38.)

1        <u>Defendant's Role in the Scheme</u>

2        For his part in the scheme, defendant negotiated the kickback

3 arrangement with the sellers, communicating with sellers around the

4 country to determine which sellers might be willing to pay the

5 kickbacks (regardless of what they ultimately called these payments),

6 and then flying around the country to meet with the sellers to

7 finalize these kickback arrangements.  In addition, defendant

8 recruited straw buyers by presenting the purchase of the condominium

9 units as an investment opportunity that did not require any money

10 down or any mortgage payments for a specified time period, and by

11 promising the straw buyers that the co-conspirators would manage the

12 condominium units for them, renting them out, and using the rental

13 income to make mortgage payments on the straw buyers' behalf.  The

14 benefit to the straw buyer was to be an upfront fee, as well as

15 possible profits when properties were resold.  (PSR ¶ 25.)

16        <u>Losses</u>

17        Defendant and his co-conspirators purchased, or caused the

18 purchase of, more than 100 properties through the scheme, using

19 financing from at least twelve mortgage lenders and secondary

20 mortgage purchasers ("victims") suffering $10,047,272 in losses as a

21 result of the scheme.  (PSR ¶¶ 58, 70, 71; Trial Exhibit 1.)

22        <u>Victim Impact</u>

23        One of the victims submitted a victim impact statement,

24 verifying its losses and stating that the fraud scheme that defendant

25 committed and other similar schemes were devastating to the company

26 and the mortgage industry.  The lender further stated that because of

27 the type of fraud scheme in which defendant engaged, mortgage lenders

28 have been compelled to add many additional layers of audits and re-

verifications of the mortgage loan process, making it more difficult and time consuming for consumers to obtain home loans. (PSR ¶¶ 71-72.)

<u>Tax Evasion - Tax Years 2008 & 2009 (Counts 8 & 9 of the FSI)</u>

During the calendar year 2008, defendant received taxable income of at least $92,300, and upon that taxable income owed the United States an income tax of approximately $22,698.  (PSR ¶ 60.)

During the calendar year 2009, defendant had and received a taxable income of at least $82,744, and upon that taxable income owed the United States an income tax of approximately $18,782.  (PSR ¶ 65.)

In total, had defendant properly reported his income on the Form 1040s for the tax years 2008 and 2009, he would have been assessed an individual income tax of at least $41,480. (PSR ¶ 69.)

**III. ARGUMENT**

"Sentencing proceedings are to begin by determining the applicable Guidelines range." <u>United States v. Carty</u>, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).  The range is "the starting point and the initial benchmark." <u>Id.</u>  However, it is also well established that "every judge is at liberty to vary from that range." <u>United States v. Mitchell</u>, 624 F.3d 1023, 1030 (9th Cir. 2010).  Thus, the Court has discretion under <u>United States v. Booker</u>, 543 U.S. 220 (2005), and <u>Kimbrough v. United States</u>, 552 U.S. 85 (2007), to sentence outside of the guideline range.

**A.    Applicable Sentencing Guidelines**

Based on the discussion above, the facts set forth in the PSR, and the other files and records in this case, the government submits that the following sentencing guidelines apply:

| Base Offense Level: | 7 | USSG §§ 2X1.1, 2B1.1(a)(2) |
|---|---|---|
| Fraud loss is greater than $9,500,000 but less than or equal to $25,000,000 | +20 | USSG § 2B1.1(b)(1)(K) |
| 10 or more victims | +2 | USSG § 2B1.1(b)(2)(A) |
| Role enhancement | +3 | USSG § 3B1.1(b) |
| Total Offense Level | 32 | |

The government agrees with the USPO in calculation of the guidelines, and its reasoning, except that the government submits that the applicable role enhancement under USSG § 3B1.1 is +3 rather than +4. Although the government originally advocated for a +4 role enhancement at defendant's 2019 sentencing, the original sentencing court applied a +3 role enhancement, rather than the +4 enhancement the government sought, and the government did not appeal. Defendant did appeal this issue (arguing that no role enhancement should be applied), but the Ninth Circuit upheld application of the +3 role enhancement, which is now law of the case.

The only open issue on remand is the calculation of loss amount for guideline purposes. As the Ninth Circuit held: "In mortgage fraud cases, we use a two-step method for calculating loss (1) take 'the entire value of the principal of the loan' and (2) subtract 'any amount recovered or recoverable by the creditor from the sale of the collateral.'" United States v. Abaji, No. 18-50241, quoting United States v. Morris, 744 F.3d 1373, 1375 (9th Cir. 2014). As set forth in the attached Santisteban Declaration, the new loss calculation for this case – using the two-step methodology outlined in Morris – is $12,185,078, which leads to a +20 enhancement for loss, in addition to the other enhancements set forth above. As also set forth above,

the total resulting offense level is level 32, leading to a recommended guideline range of 121-151 months.

**B.    Analysis of § 3553(a) Factors**

The original sentencing court determined that the applicable guideline range was 121-151 months, which the government submits is still the applicable range as discussed above, but the original sentencing court decided to vary downward by one level from the otherwise applicable range and determined that a sentence of 108 months was sufficient but not greater than necessary to serve the sentencing purposes set forth in 18 U.S.C. § 3553(a).

The factors to be considered when imposing sentence, as set forth in 18 U.S.C. § 3553(a), include:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) The need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant . . .
>
> (3) The kinds of sentences available;
>
> (4) [the applicable sentencing guidelines];
>
> (5) [the applicable sentencing guidelines policy statement];
>
> (6)  The need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct; and
>
> (7)  The need to provide restitution to the victims of the offense.

18 U.S.C. § 3553(a).

In addition to the sentencing guidelines, discussed above, factors important to the government's sentencing recommendation are discussed below.

### 1.   Nature & Circumstances of the Offense

First, the crimes that defendant committed are serious. Defendant was one of the leaders of a massive fraud scheme that caused more than $10,000,000 in losses to more than ten different mortgage lenders.  The fraud scheme preyed upon a vulnerable mortgage industry in a time where the housing market was already reeling from the 2008 financial crisis.  This type of scheme, called a builder-bailout scheme, prolonged and worsened the housing meltdown at the center of the financial crisis by keeping housing prices artificially inflated even after the market downturn, and then deepening losses that mortgage lenders suffered when condominium units needed to be sold at a fraction of the loan amounts that had financed their purchase.  Meanwhile, as the economy was in a tailspin, defendant and his co-conspirators made millions of dollars from fraudulent mortgage loans that they brokered, without putting any of their own money down and using straw borrower's names and credit.  In this way, defendant made money without investing anything of his own or putting his own credit at risk.

### 2.   Deterrence

Second, a substantial sentence is needed for deterrent purposes and to promote respect for the law.  Not only did defendant plan and carry out a massive fraud scheme, he also took advantage of the American tax system, committing tax evasion with respect to the returns that he filed for 2008 and 2009 – in part, to cover up his other criminal conduct.  Simply put, defendant repeatedly lied to and

deceived others, demonstrating a complete lack of respect for the rule of law and the norms of our society.  A substantial prison sentence will send the message to defendant and others considering such conduct that mortgage fraud is taken seriously in this District and punished accordingly.

### 3.   History & Characteristics of Defendant

Third, the history and characteristics of this defendant warrant a substantial prison term.  For his part in the scheme, defendant was the master negotiator, traveling around the country and convincing large condominium developers to enter into illegal agreements with him.  He also recruited innocent individuals to act as straw borrowers, causing them to lose large amounts and/or ruining their credit in the process.  Defendant further played a hands-on role in fabricating documents for the charged fraud scheme – one of the office workers who worked for defendant and other co-conspirators saw him standing over a copier cutting and pasting financial documents to submit with loan applications.  In sum, defendant was involved in every part of the scheme, being one of the masterminds of it, negotiating the key agreements with developers, and submitting fraudulent documents to lenders.  He both organized the scheme and supervised others in executing it, and he deserves no less than the 108 months he received at his 2019 sentencing.

## IV.   CONCLUSION

The government recognizes that the original sentencing court determined that a sentence of 108 months was sufficient but not more than necessary to achieve the goals of sentencing set forth in 18 U.S.C. § 3553A.  The government recommends that the Court sentence

defendant to a prison term of no less than 108 months followed by a 5-year term of supervised release.

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KERRY L. QUINN (Cal. Bar No. 302954)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-5423
     Facsimile:  (213) 894-6269
     E-mail:     Kerry.L.Quinn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR No. 13-001(B)-2/6-AG |
| Plaintiff, | DECLARATION OF FBI SPECIAL AGENT LUIS SANTISTEBAN & EXHIBIT |
| v. | |
| MOMOUD AREF ABAJI, | |
| Defendant. | |

**AFFIDAVIT**

I, Luis Santisteban, being duly sworn, declare and state as
follows:

## I.  INTRODUCTION

1.    I am a Special Agent with the Federal Bureau of
Investigation ("FBI") and have been since employed in January
2020. I received my initial training and instruction to become a
Special Agent at the FBI Academy located in Quantico, Virginia
where I received training concerning violations of the United
States criminal statutes. I am currently assigned to the white
collar squad at the FBI Long Beach Resident Agency, where my
duties include investigating complex financial crimes, including
bank fraud, wire fraud, identity theft, investment fraud,
securities fraud, and money laundering.

2.    I am the FBI case agent currently assigned to the
investigation and prosecution of Ali Khatib ("Khatib"), Momoud
Aref Abaji ("Abaji"), Maher Obagi ("Obagi"), Wajieh Tbakhi,
Jacqueline Burchell ("Burchell"), Mohamed El Tahir ("El Tahir")
and Mohamed Salah ("Salah," collectively with Khatib, Abaji,
Obagi, Tbakhi, Burchell, El Tahir, the "defendants") in United
States v. Abaji, et al., 8:13-CR-001(B)-AG, and United States v.
Khatib, 8:12-CR-141-AG.

3.    Attached as Exhibit 1 is a summary schedule titled
"Schedule 1," showing the loss calculation for defendant Momoud
Aref Abaji.  This loss calculation takes the principal amount of
the relevant loans involved in the charged fraud scheme and
subtracts from this the (short) sale price of the properties

1

serving as collateral for those loans, or the amounts that lenders recovered from the short sales of those properties. Information used to determine the short sale amounts was derived from public property records where possible and from a law enforcement database where public property records were not readily available. Based on training and experience, I understand that the law enforcement database itself uses public property records for the information included within Exhibit 1.

4.    The loss calculation detailed in this declaration and supporting exhibit uses the same methodology that FBI Special Agent Heather Campbell used for one of the loss calculations included as part of the declaration that she submitted on May 14, 2018 [docket no. 494, the "Campbell Declaration"], and specifically uses the same methodology as the loss calculation attached as Exhibit F to the Campbell Declaration, which was described as an "alternative" loss calculation in that declaration. The only differences, as far as I am aware, between the loss calculation attached as Exhibit F to the Campbell Declaration and the one submitted with this declaration are updates to the sales prices of some of the properties serving as collateral for the relevant loans.

5.    Using this methodology – taking the principal amount of the loans and subtracting the amount lenders were able to recover through short sales of the properties – the estimated
//
//

2

loss amount for defendant Abaji is approximately $12 million, as set forth in Exhibit 1.

6.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief and this declaration is executed at Los Angeles, California, on October 19, 2021.

Luis Santisteban
Special Agent
Federal Bureau of Investigation

3

**EXHIBIT 1**

Schedule 1
Loss Calculation Based on Foreclosure & Short Sale Data (AS OF 09/29/2020)
United States of America v. Aref Abaji 8:13-CR-001-AG-1
United States of America v. Maher Obagi 8:13-CR-001-AG-2
United States of America v. Ali Khatib 8:12-CR-141-AG

| Ex. 1 No. | Address | Unit | Approx. Settlement Date | Buyer Initials | Loan Amount | Lender | Loan # | Approximate Foreclosure Date | Approximate Resell Date | Resell Amount | Loan Amount Less Resell Amount | Parcel # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 4994 Town Terrace N., Kissimmee, FL | | 12/28/2007 | M.Q. | $256,500.00 | Stearns Lending Inc | xxxxx8404 / xxxxxxxxx5655 | 6/1/2010 | 10/1/2010 | $63,000.00 | $193,500.00 | 14-26-28-5251-0001-0600 |
| 2 | 4986 Town Terrace N., Kissimmee, FL | | 1/2/2008 | M.Q. | $256,500.00 | CitiMortgage | xxxxxxxxx5059 | 5/13/2013 | 10/18/2013 | $89,000.00 | $167,500.00 | 14-26-28-5251-0001-0560 |
| 3 | 4987 Town Terrace S., Kissimmee, FL | | 1/18/2008 | D.H. | $256,500.00 | CitiMortgage | xxxxxx3551 | N/A | 5/8/2014 | $82,300.00 | $174,200.00 | 14-26-28-5251-0001-0390 |
| 4 | 4980 Town Terrace N., Kissimmee, FL | | 1/30/2008 | M.Q. | $256,500.00 | Flagstar Bank | xxxxx08504 | 4/29/2010 | 2/9/2012 | $67,000.00 | $189,500.00 | 14-26-28-5251-0001-0530 |
| 5 | 4982 Town Terrace N., Kissimmee, FL | | 1/23/2008 | M.Q. | $256,500.00 | Indymac Bank/Onewest | xxxx86829 / xxxxxx6537 | 9/19/2013 | 7/23/2014 | $85,000.00 | $171,500.00 | 14-26-28-5251-0001-0540 |
| 6 | 2535 Old Kent Circle, Kissimmee, FL | | 3/5/2008 | S.M. | $273,600.00 | Wells Fargo Bank | xxxxxx9905 | 8/19/2009 | 11/5/2009 | $70,900.00 | $202,700.00 | 14-26-28-5251-0001-0740 |
| 7 | 2647 Old Kent Circle, Kissimmee, FL | | 4/30/2008 | E.H. | $243,200.00 | Wachovia Mortgage | xxx5371 | 3/11/2010 | 6/18/2010 | $60,000.00 | $183,200.00 | 14-26-28-5251-0001-0840 |
| 8 | 4996 Town Terrace N., Kissimmee, FL | | 5/5/2008 | E.K. | $228,000.00 | Wachovia Mortgage | xxxxxxxxxx2202 | 12/9/2010 | 1/26/2011 | $60,000.00 | $168,000.00 | 14-26-28-5251-0001-0610 |
| 9 | 4983 Town Terrace S., Kissimmee, FL | | 5/1/2008 | S.M. | $228,000.00 | Wachovia Mortgage | xxxxxxxxx6852 | 2/14/2011 | 7/11/2011 | $56,900.00 | $171,100.00 | 14-26-28-5251-0001-0410 |
| 10 | 4984 Town Terrace N., Kissimmee, FL | | 5/7/2008 | N.A. | $228,000.00 | Wachovia Mortgage | xxxxxxxxx6482 / xxxxxx8558 | 6/23/2010 | 9/13/2010 | $63,000.00 | $165,000.00 | 14-26-28-5251-0001-0550 |
| 11 | 2549 Old Kent Circle, Kissimmee, FL | | 5/29/2008 | S.M. | $243,200.00 | Liberty Savings Bank | xx-xx-xx1911 | 5/6/2010 | 7/21/2010 | $59,900.00 | $183,300.00 | 14-26-28-5251-0001-0810 |
| 12 | 7220 Westpointe Blvd, Orlando, FL | 1431 | 6/12/2008 / recorded 7/3/2008 | R.H. | $261,440.00 | First Choice Lending | xxxxxxxxx6556 / xxxxxx4305 | 12/14/2009 | 3/4/2010 | $72,000.00 | $189,440.00 | 02-23-28-0701-01-431 / 28-23-02-0701-01-431 |
| 13 | 7280 Westpointe Blvd, Orlando, FL | 821 | 6/17/2008 / recorded 7/3/2008 | E.K. | $249,440.00 | MortgageAmerica Inc | xxxxxxxxx6693 / xxxxxx4306 | 4/23/2010 | 10/25/2010 | $74,200.00 | $175,240.00 | 02-23-28-0701-00-821 / 28-23-02-0701-00-821 |
| 14 | 7280 Westpointe Blvd, Orlando, FL | 827 | 7/11/2008 | N.A. | $293,760.00 | Washington Mutual | xxxxxx4665 / xxxxx4751 / xxxxxx1977 | 7/6/2010 | 3/2/2011 | $90,000.00 | $203,760.00 | 02-23-28-0701-00-827 / 28-23-02-0701-00-827 |
| 15 | 7300 Westpointe Blvd, Orlando, FL | 736 | 6/30/2008 / recorded 2/19/2009 | E.K. | $253,840.00 | Washington Mutual | xxxxxx2278 / xxxxxx6237 | 2/26/2010 | 7/23/2010 | $71,000.00 | $182,840.00 | 02-23-28-0701-00-736 / 28-23-02-0701-00-736 |
| 16 | 7280/7380 Westpointe Blvd, Orlando, FL | 823 | 7/11/2008 / recorded 8/12/2009 | N.A. | $254,400.00 | GMAC dba Ditech | xxxxxxxxx4801 / xxxxxx7674 | 5/28/2010 | 6/21/2011 | $93,720.00 | $160,680.00 | 02-23-28-0701-00-823 / 28-23-02-0701-00-823 |
| 17 | 7380/7300 Westpointe Blvd, Orlando, FL | 726 | 7/22/2008 / recorded 8/12/2009 | E.H. | $249,440.00 | GMAC dba Ditech | xxxxxxxxx2270 / xxxxxx8850 | 6/14/2010 | 4/11/2011 | $99,600.00 | $149,840.00 | 02-23-28-0701-00-726 / 28-23-02-0701-00-726 |

**Schedule 1**
**Loss Calculation Based on Foreclosure & Short Sale Data (AS OF 09/29/2020)**
**United States of America v. Aref Abaji 8:13-CR-001-AG-1**
**United States of America v. Maher Obagi 8:13-CR-001-AG-2**
**United States of America v. Ali Khatib 8:12-CR-141-AG**

| Ex. 1 No. | Address | Unit | Approx. Settlement Date | Buyer Initials | Lender | Loan Amount | Loan # | Approximate Foreclosure Date | Approximate Resell Date | Resell Amount | Loan Amount Less Resell Amount | Parcel # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18 | 7360 Westpointe Blvd, Orlando, FL | 133 | 7/30/2008 recorded 9/4/2008 | R.H. | CitiMortgage | $268,000.00 | xxxxxxx6377 | 6/17/2010 | 9/10/2010 | $105,000.00 | $163,000.00 | 02-23-28-0701-00-133 / 28-23-02-0701-00-133 |
| 19 | 7310 Westpointe Blvd, Orlando, FL | 611 | 8/8/2008 recorded 10/17/2008 | S.K. | GMAC dba Ditech | $297,600.00 | xxxxxxxx9297 | 2/17/2010 | 6/1/2010 | $71,200.00 | $226,400.00 | 02-23-28-0701-00-611 / 28-23-02-0701-00-611 |
| 20 | 7280 Westpointe Blvd, Orlando, FL | 814 | 8/18/2008 recorded 9/17/2008 | N.A. | Citi Mortgage | $235,500.00 | xxxxxxx3663 | 7/11/2012 | 10/12/2012 | $69,000.00 | $166,500.00 | 02-23-28-0701-00-814 / 28-23-02-0701-00-814 |
| 21 | 7270 Westpointe Blvd, Orlando, FL | 927 | 8/28/2008 | S.K. | Citimortgage | $300,880.00 | xxxxxxx2041 | 10/6/2010 | 11/23/2010 | $80,000.00 | $220,880.00 | 02-23-28-0701-00-927 / 28-23-02-0701-00-927 |
| 22 | 7200 Westpointe Blvd, Orlando, FL | 1524 | 9/4/2008 recorded 10/23/2008 | S.A. | Fifth Third Mortgage | $229,950.00 | xxxxx6191 / xxxxxx1977 | 2/25/2010 | 4/25/2011 | $88,200.00 | $141,750.00 | 02-23-28-0701-01-524 / 28-23-02-0701-01-524 |
| 23 | 7220 Westpointe Blvd, Orlando, FL | 1414 | 9/4/2008 recorded 9/25/2008 | S.A. | CitiMortgage | $247,200.00 | xxxxxxx3087 | 6/19/2015 | 10/9/2015 | $61,000.00 | $186,200.00 | 02-23-28-0701-01-414 / 28-23-02-0701-01-414 |
| 24 | 7300 Westpointe Blvd, Orlando, FL | 723 | 9/30/2008 recorded 10/7/2009 | P.P. | Citimortgage | $262,960.00 | xxxxxxx2312 | 5/30/2013 | 9/20/2013 | $80,000.00 | $182,960.00 | 02-23-28-0701-00-723 / 28-23-02-0701-00-723 |
| 25 | 8434 Walerga Rd Antelope, CA | 932 | 8/30/2008 | M.A. | GMAC dba Ditech | $180,000.00 | xxxxxxxxx2901 | N/A | 3/30/2012 | $76,500.00 | $103,500.00 | 203-2050-001-0138 |
| 26 | 8434 Walerga Rd Antelope, CA | 136 | 8/20/2008 | M.A. | JPMorgan Chase | $159,200.00 | xxxx7987 | N/A | 3/29/2012 | $59,000.00 | $100,200.00 | 203-2050-001-0022 |
| 27 | 8434 Walerga Rd Antelope, CA | 921 | 9/2/2008 | N.K. | Wells Fargo Bank | $180,000.00 | xxxxxxx3475 | 2/7/2011 | 6/9/2011 | $85,000.00 | $95,000.00 | 203-2050-001-0133 |
| 28 | 8434 Walerga Rd Antelope, CA | 124 | 9/5/2008 | N.K. | HSBC Mortgage | $152,200.00 | xxx0169 / xxxxx1699 | 9/30/2010 | 2/16/2011 | $60,000.00 | $92,200.00 | 203-2050-001-0012 |
| 29 | 8434 Walerga Rd Antelope, CA | 1033 | 9/11/2008 | N.K. | Greenlight Financial | $180,000.00 | xxxxx6512 / xxxx6497 | 4/27/2011 | 9/30/2011 | $85,000.00 | $95,000.00 | 203-2050-001-0151 |
| 30 | 8434 Walerga Rd Antelope, CA | 238 | 9/10/2008 | N.K. | Wells Fargo Bank | $149,250.00 | xxxxx8897 | 8/30/2010 | 5/23/2011 | $54,000.00 | $95,250.00 | 203-2050-001-0048 |
| 31 | 8434 Walerga Rd Antelope, CA | 128 | 9/12/2008 | M.A. | Greenlight Financial | $159,200.00 | xxxx1454 / xxxxx6316 | N/A | 4/27/2012 | $60,000.00 | $99,200.00 | 203-2050-001-0016 |
| 32 | 8434 Walerga Rd Antelope, CA | 228 | 10/23/2008 | N.K. | Countrywide | $149,250.00 | xxxxx8376 | 7/16/2010 | 4/29/2011 | $68,500.00 | $80,750.00 | 203-2050-001-0040 |
| 33 | 8434 Walerga Rd Antelope, CA | 138 | 11/4/2008 | N.K. | Bank of America | $159,200.00 | xxxxx7460 / xxxxxxx5534 | 7/23/2010 | 12/15/2010 | $60,500.00 | $98,700.00 | 203-2050-001-0024 |
| 34 | 8434 Walerga Rd Antelope, CA | 332 | 12/19/2008 | E.H. | HSBC Mortgage | $176,250.00 | xxx5464 | N/A | 12/5/2012 | $74,000.00 | $102,250.00 | 203-2050-001-0066 |
| 35 | 8434 Walerga Rd Antelope, CA | 331 | 12/19/2008 | E.H. | Bank of America | $188,000.00 | xxxxx9681 / xxxxxx6201 | 8/21/2014 | 8/28/2015 | $118,500.00 | $69,500.00 | 203-2050-001-0065 |
| 36 | 8434 Walerga Rd Antelope, CA | 1231 | 12/23/2008 | E.H. | Wachovia Mortgage | $188,000.00 | xxxxxx9566 | N/A | 1/30/2013 | $66,000.00 | $122,000.00 | 203-2050-001-0173 |
| 37 | 8434 Walerga Rd Antelope, CA | 812 | 2/3/2009 | A.A. | JPMorgan Chase | $188,000.00 | xxxxxx1220 | N/A | 9/20/2011 | $62,500.00 | $125,500.00 | 203-2050-001-0106 |
| 38 | 8434 Walerga Rd Antelope, CA | 831 | 1/30/2009 | A.A. | HSBC Mortgage | $176,250.00 | xxx0415 | N/A | 9/16/2011 | $57,500.00 | $118,750.00 | 203-2050-001-0121 |
| 39 | 8434 Walerga Rd Antelope, CA | 326 | 1/27/2009 | E.H. | US Bank/Downey S&L | $160,000.00 | xxx1985 | N/A | as of 4/28/18 - still held by E.H. | | | 203-2050-001-0062 |

Schedule 1
Loss Calculation Based on Foreclosure & Short Sale Data (AS OF 09/29/2020)
United States of America v. Aref Abaji 8:13-CR-001-AG-1
United States of America v. Maher Obagi 8:13-CR-001-AG-2
United States of America v. Ali Khatib 8:12-CR-141-AG

| Ex.1 No. | Address | Unit | Approx. Settlement Date | Buyer Initials | Loan Amount | Lender | Loan # | Approximate Foreclosure Date | Approximate Resell Date | Resell Amount | Loan Amount Less Resell Amount | Parcel # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 40 | 8434 Walerga Rd Antelope, CA | 213 | 12/28/2008 recorded 9/4/2009 | E.H. | $178,400.00 | JPMorgan Chase | xxxxxx1239 | N/A | 3/7/2013 | $57,500.00 | $120,900.00 | 203-2050-001-0027 |
| 41 | 8434 Walerga Rd Antelope, CA | 816 | 2/3/2009 | B.K. | $188,000.00 | Bank of America | xxxxx1186 / xxxxxx1875 | 9/23/2014 | 4/20/2015 | $137,500.00 | $50,500.00 | 203-2050-001-0110 |
| 42 | 8434 Walerga Rd Antelope, CA | 232 | 2/9/2009 | A.K. | $188,000.00 | GMAC dba Ditech | xxxxxxx6044 | 3/30/2011 | 7/19/2011 | $64,000.00 | $124,000.00 | 203-2050-001-0042 |
| 43 | 8434 Walerga Rd Antelope, CA | 337 | 1/27/2009 | A.K. | $188,000.00 | Bank of America | xxxxxx9584 / xxxxxx7743 | 6/23/2010 | 3/10/2011 | $65,000.00 | $123,000.00 | 203-2050-001-0071 |
| 44 | 8434 Walerga Rd Antelope, CA | 1233 | 2/13/2009 | A.K. | $188,000.00 | Shelter Mortgage | xxxx0014 | 7/27/2010 | 1/11/2012 | $62,000.00 | $126,000.00 | 203-2050-001-0175 |
| 45 | 8434 Walerga Rd Antelope, CA | 314 | 2/10/2009 | A.K. | $188,000.00 | JPMorgan Chase | xxxxxx7736 | 2/15/2011 | 1/24/2013 | $75,000.00 | $113,000.00 | 203-2050-001-0052 |
| 46 | 8434 Walerga Rd Antelope, CA | 1121 | 1/20/2009 | A.K. | $178,000.00 | Wells Fargo Bank | xxxxxxxx3829 | N/A | 9/30/2010 | $90,000.00 | $88,000.00 | 203-2050-001-0157 |
| 47 | 8434 Walerga Rd Antelope, CA | 233 | 3/10/2009 | G.A. | $188,000.00 | Bank of America | xxxxxx6370 / xxxxxx5559 | 3/25/2011 | 7/7/2011 | $51,000.00 | $137,000.00 | 203-2050-001-0043 |
| 48 | 8434 Walerga Rd Antelope, CA | 237 | 3/3/2009 | G.A. | $188,000.00 | JPMorgan Chase | xxxxxx8708 | 2/14/2011 | 6/9/2011 | $47,000.00 | $141,000.00 | 203-2050-001-0047 |
| 49 | 8434 Walerga Rd Antelope, CA | 833 | 3/23/2009 | G.A. | $176,250.00 | HSBC Mortgage | xxx6068 | 1/4/2011 | 5/18/2011 | $59,000.00 | $117,250.00 | 203-2050-001-0133 |
| 50 | 8434 Walerga Rd Antelope, CA | 825 | 3/17/2009 | R.D. | $164,500.00 | HSBC Mortgage | xxx7627 | as of 4/28/18 - still held by R.D. | | | | 203-2050-001-0117 |
| 51 | 8434 Walerga Rd Antelope, CA | 134 | 3/6/2009 | D.H. | $188,000.00 | HSBC Mortgage | xxx1292 / xxxxx2920 | 7/16/2010 | 9/5/2012 | $76,500.00 | $111,500.00 | 203-2050-001-0020 |
| 52 | 8434 Walerga Rd Antelope, CA | 1212 | 2/19/2009 | B.K. | $188,000.00 | JPMorgan Chase | xxxxxx4669 | 12/24/2014 | 2/13/2015 | $129,500.00 | $58,500.00 | 203-2050-001-0166 |
| 53 | 8434 Walerga Rd Antelope, CA | 1223 | 3/17/2009 | B.K. | $176,250.00 | HSBC Mortgage | xxxxxx6278 | 12/29/2014 | 12/29/2014 | $106,000.00 | $70,250.00 | 203-2050-001-0171 |
| 54 | 8434 Walerga Rd Antelope, CA | 131 | 4/9/2009 | F.K. | $188,000.00 | JPMorgan Chase | xxxxxx8820 | 6/25/2012 | 8/8/2012 | $78,000.00 | $110,000.00 | 203-2050-001-0017 |
| 55 | 8434 Walerga Rd Antelope, CA | 324 | 3/3/2009 | F.K. | $188,000.00 | Bank of America | xxxx8137 / xxxxxx8041 | 12/29/2011 | 12/29/2011 | $42,000.00 | $146,000.00 | 203-2050-001-0060 |
| 56 | 8434 Walerga Rd Antelope, CA | 531 | 3/10/2009 | R.D. | $187,500.00 | Bank of America | xxxx8080 / xxxxxx8068 | as of 4/28/18 - still held by R.D. | | | | 203-2050-001-0093 |
| 57 | 8434 Walerga Rd Antelope, CA | 823 | 4/9/2009 | S.F. | $159,200.00 | JPMorgan Chase | xxxxxx9017 | 3/21/2011 | 3/21/2011 | $60,033.00 | $99,167.00 | 203-2050-001-0115 |
| 58 | 8434 Walerga Rd Antelope, CA | 126 | 4/22/2009 | F.K. | $176,250.00 | HSBC Mortgage | xxx5590 | 6/15/2012 | 7/11/2012 | $67,500.00 | $108,750.00 | 203-2050-001-0014 |
| 59 | 8434 Walerga Rd Antelope, CA | 113 | 4/29/2009 | S.F. | $149,250.00 | HSBC Mortgage | xxx7308 | as of 4/28/18 - not yet resold | | | | 203-2050-001-0003 |
| 60 | 8434 Walerga Rd Antelope, CA | 832 | 5/6/2009 | G.A. | $176,250.00 | Bank of America | xxxxx3377 / xxxxxx3139 | 5/19/2011 | 1/25/2012 | $62,000.00 | $114,250.00 | 203-2050-001-0122 |
| 61 | 8434 Walerga Rd Antelope, CA | 133 | 5/13/2009 | S.F. | $159,200.00 | Bank of America | xxxxx8236 | 7/19/2010 | 1/3/2011 | $58,000.00 | $101,200.00 | 203-2050-001-0019 |
| 62 | 8434 Walerga Rd Antelope, CA | 837 | 6/5/2009 | L.E. | $149,250.00 | Wells Fargo Bank | xxxxxx6576 | 7/23/2010 | 8/12/2010 | $92,000.00 | $57,250.00 | 203-2050-001-0127 |
| 63 | 16013 S Desert Foothills PKWY, Phoenix, AZ | 1017 | 12/21/2008 | S.A. | $202,320.00 | Countrywide | xxxxx7965 | 2/8/2010 | 6/16/2010 | $89,900.00 | $112,420.00 | 300-97-502 |
| 64 | 16013 S Desert Foothills PKWY, Phoenix, AZ | 1115 | 11/3/2008 | N.A. | $199,920.00 | Wells Fargo Bank | xxxxxxxx7806 / xxxxx3749 | 4/22/2010 | 7/9/2010 | $69,000.00 | $130,920.00 | 300-97-600 |
| 65 | 16013 S Desert Foothills PKWY, Phoenix, AZ | 1026 | 11/5/2008 | I.O. | $200,000.00 | Countrywide | xxxxxx8882 | 3/4/2010 | 6/11/2010 | $94,000.00 | $106,000.00 | 300-97-511 |
| 66 | 16013 S Desert Foothills PKWY, Phoenix, AZ | 1016 | 11/7/2008 | N.A. | $202,320.00 | Countrywide | xxxxxx5134 | 3/15/2011 | 7/15/2011 | $87,500.00 | $114,820.00 | 300-97-501 |

Schedule 1
Loss Calculation Based on Foreclosure & Short Sale Data (AS OF 09/29/2020)
United States of America v. Aref Abaji 8:13-CR-001-AG-1
United States of America v. Maher Obagi 8:13-CR-001-AG-2
United States of America v. Ali Khatib 8:12-CR-141-AG

| Ex. 1 No. | Address | Unit | Approx. Settlement Date | Buyer Initials | Loan Amount | Lender | Loan # | Approximate Foreclosure Date | Approximate Resell Date | Resell Amount | Loan Amount Less Resell Amount | Parcel # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 67 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 2116 | 11/21/2008 | W.H. | $248,800.00 | Wells Fargo Bank | xxxxxxxxxx6528 | N/A | 7/1/2013 | $125,000.00 | $123,800.00 | 300-97-777 |
| 68 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 1045 | 11/21/2008 | R.M. | $214,965.00 | Wells Fargo Bank | xxxxxxxxxx6255 | N/A | 5/25/2010 | $72,500.00 | $142,465.00 | 300-97-530 |
| 69 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 1118 | 11/25/2008 | J.H. | $201,520.00 | Bank of America | xxxxx4549 / xxxxxx0456 | 4/10/2014 | 4/17/2014 | $62,500.00 | $139,020.00 | 300-97-603 |
| 70 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 1014 | 11/26/2008 | I.O. | $215,120.00 | Wachovia Mortgage | xxxxxxxxxx5129 | 4/6/2010 | 9/28/2010 | $73,500.00 | $141,620.00 | 300-97-499 |
| 71 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 1020 | 12/1/2008 | R.M. | $208,300.00 | HSBC Mortgage | xxx0637 | 2/11/2010 | 6/3/2010 | $82,000.00 | $126,300.00 | 300-97-505 |
| 72 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 2100 | 12/5/2008 | N.A. | $210,320.00 | GMAC dba Ditech | xxxxxxxxxx6558 | 6/15/2010 | 3/1/2011 | $65,500.00 | $144,820.00 | 300-97-761 |
| 73 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 1100 | 12/23/2008 | J.H. | $187,146.00 | GMAC dba Ditech | xxxxxxxxxx4182 | 9/28/2010 | 3/23/2011 | $65,000.00 | $122,146.00 | 300-97-585 |
| 74 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 1133 | 1/23/2009 | J.H. | $189,650.00 | HSBC Mortgage | xxx4842 | 8/27/2010 | 3/4/2011 | $57,000.00 | $132,650.00 | 300-97-618 |
| 75 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 1009 | 3/12/2009 | J.S. | $239,920.00 | Wells Fargo Bank | xxxxxxxxxx0204 | 8/10/2010 | 8/23/2010 | $77,500.00 | $162,420.00 | 300-97-494 |
| 76 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 1116 | 7/16/2009 | J.S. | $224,925.00 | Bank of America | xxxxx4078 / xxxxxx7362 | 7/8/2010 | 8/22/2011 | $67,125.00 | $157,800.00 | 300-97-601 |
| 77 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 1040 | 4/22/2009 | J.S. | $211,200.00 | Bank of America | xxxxx1168 / xxxxxx1627 | 7/9/2010 | 2/28/2011 | $70,700.00 | $140,500.00 | 300-97-525 |
| 78 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 1021 | 11/20/2008 | H.I. | $202,320.00 | Wells Fargo Bank | xxxxxxxxxx0561 | 4/28/2009 | 10/25/2011 | $68,400.00 | $133,920.00 | 300-97-506 |
| 79 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 2029 | 5/21/2009 | J.S. | $199,250.00 | Shelter Mortgage | xxxxx3346 / xxxxxx1058 | 6/10/2010 | 9/16/2010 | $78,000.00 | $121,250.00 | 300-97-690 |
| 80 | 16013 S Desert Foothills PKWY, Phoenix, AZ 85048 | 1117 | 6/27/2009 | H.K. | $219,750.00 | Wells Fargo Bank | xxxxxxxxxx47095 | 7/27/2010 | 8/9/2010 | $81,249.00 | $138,501.00 | 300-97-602 |
| 81 | 3830 E Lakewood PKWY, Phoenix, AZ 85048 | 3156 | 12/26/2008 | M.A. | $212,720.00 | Bank of America | xxxxx9430 | 7/7/2010 | 2/7/2011 | $70,000.00 | $142,720.00 | 306-04-572 |
| 82 | 3830 E Lakewood PKWY, Phoenix, AZ 85048 | 1073 | 1/7/2009 | M.A. | $207,920.00 | Wachovia Mortgage | xxxxxxxxxx3421 | 7/20/2010 | 2/18/2011 | $75,000.00 | $132,920.00 | 306-04-213 |
| 83 | 3830 E Lakewood PKWY, Phoenix, AZ 85048 | 1114 | 1/7/2009 | M.A. | $188,000.00 | Wells Fargo Bank | xxxxxxxxxx5884 | 8/17/2010 | 8/30/2010 | $60,100.00 | $127,900.00 | 306-04-254 |
| 84 | 3830 E Lakewood PKWY, Phoenix, AZ 85048 | 3164 | 1/13/2009 | M.A. | $210,320.00 | Bank of America | xxxxx4463 / xxxxxx1344 | 7/9/2010 | 11/30/2010 | $76,500.00 | $133,820.00 | 306-04-576 |
| 85 | 3830 E Lakewood PKWY, Phoenix, AZ 85048 | 1025 | 1/30/2009 | N.B. | $197,520.00 | Countrywide Bank | xxxxx2981 | 4/15/2011 | 8/26/2011 | $82,000.00 | $115,520.00 | 306-04-165 |
| 86 | 3830 E Lakewood PKWY, Phoenix, AZ 85048 | 1145 | 2/25/2009 | N.B. | $188,000.00 | Wells Fargo Bank | xxxxxxxxxx7455 | 4/4/2011 | 5/24/2011 | $67,250.00 | $120,750.00 | 306-04-285 |

**Schedule 1**
**Loss Calculation Based on Foreclosure & Short Sale Data (AS OF 09/29/2020)**
**United States of America v. Aref Abaji 8:13-CR-001-AG-1**
**United States of America v. Maher Obagi 8:13-CR-001-AG-2**
**United States of America v. Ali Khatib 8:12-CR-141-AG**

| Ex. 1 No. | Address | Unit | Approx. Settlement Date | Buyer Initials | Loan Amount | Lender | Loan # | Approximate Foreclosure Date | Approximate Resell Date | Resell Amount | Loan Amount Less Resell Amount | Parcel # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 87 | 3830 E Lakewood PKWY, Phoenix, AZ 85048 | 1150 | 6/10/2009 | A.A. | $191,920.00 | Shelter Mortgage | xxxxx6612 | 6/3/2010 | 6/17/2010 | $71,911.00 | $120,009.00 | 306-04-290 |
| 88 | 5855 N Kolb Rd, Tucson, AZ | 13210 | 4/28/2009 | W.A. | $171,350.00 | HSBC Mortgage | xxx0203 / xxxxxx0687 | 2/15/2011 | 6/14/2011 | $107,000.00 | $64,350.00 | 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 |
| 89 | 5855 N Kolb Rd, Tucson, AZ | 1102 | 4/29/2009 | M.C. | $147,700.00 | HSBC Mortgage | xxx9474 | 7/28/2010 | unclear from R/E database selling price from HSBC to skywater properties | | | 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 |
| 90 | 5855 N Kolb Rd, Tucson, AZ | 13211 | 5/7/2009 | A.A. | $142,792.00 | Bank of America | xxxxxx8699 / xxxxxx4867 | 10/26/2011 | 11/14/2011 | $71,800.00 | $70,992.00 | 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 |
| 91 | 5855 N Kolb Rd, Tucson, AZ | 6105 | 5/22/2009 | M.C. | $157,592.00 | Bank of America | xxxxxx7171 / xxxxxx4755 | 8/25/2010 | 9/8/2011 | $95,000.00 | $62,592.00 | 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 |
| 92 | 5855 N Kolb Rd, Tucson, AZ | 3104 | 6/1/2009 | A.A. | $178,792.00 | Bank of America | xxxxxx6324 / xxxxxx4148 | 7/8/2010 | 9/8/2010 | $158,500.00 | $20,292.00 | 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 |
| 93 | 5855 N Kolb Rd, Tucson, AZ | 13104 | 6/11/2009 | R.E. | $178,792.00 | Bank of America | xxxxxx4929 / xxxxxx0598 | 4/28/2011 | 7/5/2011 | $119,000.00 | $59,792.00 | 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 |
| 94 | 5855 N Kolb Rd, Tucson, AZ | 5104 W | 6/12/2009 | W.E. | $178,792.00 | Bank of America | xxx3202 | 1/26/2011 | 5/27/2011 | $109,000.00 | $69,792.00 | 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 |
| 95 | 5855 N Kolb Rd, Tucson, AZ | 6104 | 6/15/2009 | W.E. | $178,792.00 | Bank of America | xxxxxx6737 / xxxxxx5637 | 7/21/2011 | 10/25/2011 | $102,000.00 | $76,792.00 | 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 |
| 96 | 5855 N Kolb Rd, Tucson, AZ | 10105 | 6/19/2009 | F.M. | $151,992.00 | Bank of America | xxxxxx6842 / xxxxxx4546 | 5/24/2013 | 11/19/2014 | $115,000.00 | $36,992.00 | 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 |
| 97 | 5855 N Kolb Rd, Tucson, AZ | 1101 | 6/25/2009 | M.E. | $178,792.00 | Bank of America | xxxxxx6351 / xxxxxx2589 | 5/6/2011 | 8/19/2013 | $117,500.00 | $61,292.00 | 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 |
| 98 | 5855 N Kolb Rd, Tucson, AZ | 10102 | 7/7/2009 | F.M. | $157,592.00 | Bank of America | xxxxxx6045 | 9/4/2013 | 9/30/2013 | $93,100.00 | $64,492.00 | 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 |
| 99 | 5855 N Kolb Rd, Tucson, AZ | 4104 | 7/9/2009 | A.W. | $167,250.00 | HSBC Mortgage | xxx3303 | N/A | 12/16/2011 | $118,000.00 | $49,250.00 | 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 |
| 100 | 5855 N Kolb Rd, Tucson, AZ | 7103 | 8/3/2009 | M.E. | $150,000.00 | HSBC Mortgage | xxx4801 | 1/31/2012 | 4/17/2012 | $115,500.00 | $34,500.00 | 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 |
| 101 | 5855 N Kolb Rd, Tucson, AZ | 3103 | 7/20/2009 | M.H. | $171,200.00 | Bank of America | xxxxxx5033 / xxxxxx8809 | 7/26/2010 | 1/19/2011 | $122,500.00 | $48,700.00 | 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 |
| 102 | 5855 N Kolb Rd, Tucson, AZ | 10101 | 7/21/2009 | M.H. | $182,790.00 | Bank of America | xxxxxx1816 | 8/4/2010 | 3/25/2011 | $125,000.00 | $57,790.00 | 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 |
| 103 | 5855 N Kolb Rd, Tucson, AZ | 9210 | 7/27/2009 | A.E. | $159,000.00 | Bank of America | xxxxxx4158 / xxxxxx1238 | 8/11/2010 | 3/26/2012 | $102,800.00 | $56,200.00 | 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 |
| 104 | 5855 N Kolb Rd, Tucson, AZ | 1105 | 7/27/2009 | H.K. | $153,600.00 | Bank of America | xxxxxx4272 / xxxxxx6600 | 8/5/2011 | unclear from R/E database selling price from BOA to Skywater Properties | | | 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 |
| 105 | 5855 N Kolb Rd, Tucson, AZ | 13105 | 7/27/2009 | J.K. | $161,200.00 | HSBC Mortgage | xxx0395 | N/A | 3/13/2012 | $101,000.00 | $60,200.00 | 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 |
| 106 | 5855 N Kolb Rd, Tucson, AZ | 10104 | 8/6/2009 | R.E. | $167,250.00 | HSBC Mortgage | xxx4035 | 2/8/2011 | 8/4/2011 | $107,000.00 | $60,250.00 | 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 |

Schedule 1
Loss Calculation Based on Foreclosure & Short Sale Data (AS OF 09/29/2020)
United States of America v. Aref Abaji 8:13-CR-001-AG-1
United States of America v. Maher Obagi 8:13-CR-001-AG-2
United States of America v. Ali Khatib 8:12-CR-141-AG

| Ex. 1 No. | Address | Unit | Approx. Settlement Date | Buyer Initials | Loan Amount | Lender | Loan # | Approximate Foreclosure Date | Approximate Resell Date | Resell Amount | Loan Amount Less Resell Amount | Parcel # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 107 | 5855 N Kolb Rd., Tucson, AZ | 9105 | 8/7/2009 | Y.L. | $146,250.00 | HSBC Mortgage | xxx2119 | N/A | unclear from R/E database 1/26/2012 selling price from Y.L. to S.H. | | | 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 |
| 108 | 5855 N Kolb Rd., Tucson, AZ | 6106 | 8/4/2009 | R.E. | $178,792.00 | Bank of America | xxxxxx8042 | 2/3/2011 | 5/10/2011 | $115,150.00 | $63,642.00 | 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 |
| 109 | 5855 N Kolb Rd., Tucson, AZ | 8212 | 8/13/2009 | Y.L. | $177,750.00 | Bank of America | xxxxxx9824 / xxxxxxx3144 / xxxxx8251 | 1/19/2012 | 3/9/2012 | $129,900.00 | $47,850.00 | 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 |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | Total Loan Amount | | | $21,586,216 | | | | Total Loss Amount | | $12,185,078 | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |